UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICHAEL J. BIBBY,                          :
        Plaintiff,              :
                                           :
      v.                             :        C.A. No. 16-555JJM
                                           :
NANCY A. BERRYHILL, ACTING                 :
COMMISSIONER OF SOCIAL SECURITY,           :
        Defendant.              :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Michael J. Bibby was a child of seventeen when he applied for disability, but

turned eighteen, triggering adult disability analysis, while the matter was pending.  He claims

that he has been disabled since he was fifteen (alleging onset on January 1, 2011) due to

developmental delays, attention deficit hyperactivity disorder ("ADHD"), conduct and

oppositional-defiant disorders and other special needs.  The matter is now before the Court on

Plaintiff's motion to reverse the Commissioner's decision denying Supplemental Security

Income ("SSI") under § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3) (the

"Act").  Focusing on the determination of the Administrative Law Judge ("ALJ") that, since

turning eighteen, he has not been disabled,[1] Plaintiff contends that the ALJ's adult analysis is

---

[1] The ALJ's decision also reflects a full blown analysis of the six domains foundational to the sequential evaluation for a child's disability claim, resulting in the determination that Plaintiff had less than marked limitations in the three domains in issue and no limits in the others.  Tr. 19-28.  Because Plaintiff's application was filed less than twelve months before his eighteenth birthday, this aspect of his claim is subject to denial on durational grounds as long as the adult denial is sustained.  See Program Operations Manual System ("POMS") DI 25201.010(c)(2) ("If an individual is found disabled under the childhood standard, but not under the adult standard, and the period prior from onset to attainment of age 18 was less than 12 months, establish a duration denial.").  Accordingly, Plaintiff's arguments are laser-focused on the ALJ's application of the adult standard of disability; while not conceding that the ALJ's pre-eighteen decision is correct, he makes no argument that there was error.  Based on his silence, the Commissioner argues that Plaintiff has waived his right to challenge any error in the ALJ's determination of no-disability prior to the age of eighteen.  In light of my recommendation, I do not address this argument.

tainted by his failure properly to consider the evidence of Plaintiff's inability to handle customary work pressures. Because of this error, he argues, the ALJ's residual functional capacity ("RFC")[2] assessment is not supported by substantial evidence. Defendant Nancy A. Berryhill asks the Court to affirm the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that the ALJ's findings are amply supported by substantial evidence and recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 15) be GRANTED.

## I.    Background

Plaintiff was born prematurely on October 14, 1995, and was placed in foster care for his first year. Tr. 301. Following several placements with his biological mother, punctuated by stints in various foster homes, at the age of two and a half, he was placed with and ultimately adopted by his grandmother. Id. From the age of three, he began attending the Providence Center's early childhood unit, which referred him at age four for a psychiatric evaluation with psychiatrist Dr. James Greer because of serious temper outbursts and aggressive behavior. Tr. 440. Noting "significant environmental stress, particularly removal from his mother's custody and placement with his grandmother," Dr. Greer observed that Plaintiff was restless and distractible with low frustration tolerance but was unable to make a definitive diagnosis, opining that both ADHD and bipolar disorder should be considered. Tr. 441. Dr. Greer continued as

---

[2] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

2

Plaintiff's treating psychiatrist, seeing him approximately every one to three months, from age four through age nineteen.  In addition, the Providence Center's records for the period covered by the pending claim reflects that Plaintiff and his grandmother met regularly (approximately monthly) with Mr. Louis Charron, a licensed social worker, for family therapy.

Throughout the period in issue, the Providence Center's diagnoses for Plaintiff were mood disorder, ADHD, conduct disorder, adjustment disorder and oppositional/defiant disorder. Tr. 279, 416.  Nevertheless, testing of Plaintiff's intellectual and cognitive abilities was done by a school psychologist in 2012, who observed Plaintiff to be "polite and respectful" with "adequate focus and concentration," and with "excellent" effort, cooperation, perseverance and tolerance for frustration.  Tr. 442.  Her testing yielded scores in the average range for reasoning ability but low average for processing and working memory.  Id.  In connection with the disability application, on August 27, 2013, Plaintiff was tested again by Dr. Jorge Armesto, a state agency consultative examiner.  Dr. Armesto's intellectual test scores are loosely consistent with those of the school psychologist; they establish intellectual ability in the low average range, with average academic achievement, but with certain areas (working memory and associative learning and retrieval) in the low or very low range.  Tr. 302-07.  Dr. Armesto also administered emotional tests, which reflect moderate elevation in depression and anxiety, but average scores for attitudes related to conduct disorder and oppositional defiant disorder and for thoughts about self and others.  Tr. 305.  Like the school psychologist, Dr. Armesto observed Plaintiff to be polite and in good behavioral control with age-appropriate attention span, appropriate concentration and task persistence, and no displays of frustration or aggression.  Tr. 305-06.

The Providence Center's treating notes reflect Plaintiff's substantial improvement since early childhood.  For example, in January 2015, Dr. Greer wrote "notable improvement has been

seen in explosivity in recent years," as well as that Plaintiff was attending school and "doing well." Tr. 359.  Dr. Greer's mental status examinations typically resulted in normal findings, sometimes with findings of anxious or labile mood and incongruent affect.  E.g., Tr. 359, 361, 388, 435.  The therapist, Mr. Charron, also made mental status observations at nearly every appointment; these are almost uniformly benign, except for occasional agitation and incongruent affect.  Tr. 343, 346, 399.  At almost every appointment, Mr. Charron noted that Plaintiff was either cooperative or very cooperative with his grandmother.  E.g., 342, 371, 437.  And while therapy sessions occasionally addressed Plaintiff's anger, Tr. 436, most of them reflect that Plaintiff was doing well.  E.g., Tr. 399 ("Client is doing very well. . . . Grand parent is very pleased with client's behavior. . . . Client was cooperative in this session with his grandmother.")

At school, Plaintiff was provided special education services.  An IEP from 2014 describes him as a "respectful student who gets along well with his peers," but who "needs to appropriately express his frustrations and not walk out of the room when upset."  Tr. 240.  After high school graduation, he was placed at the Community College of Rhode Island for a fifth year of education to receive transitional instruction.  Tr. 232.  Plaintiff did well during this year, Tr. 359, but found the instruction "non-challenging" and felt he was being treated "like a kid."  Tr. 370, 435.  The teacher for the fifth year scored Plaintiff as academically average with good attendance, no issues with acquiring and using information and some problems with attending and completing tasks; this teacher noted that Plaintiff had problems in dealing with others, although he "demonstrates more control over his feelings while he is at school."  Tr. 264-68.  However, the teacher expressed concern that Plaintiff's emotions could hinder him from successfully transitioning to independent living and recommended a "strict routine and guidance in order to be successful and independent."  Tr. 271.

Also in 2014, on a referral from Goodwill Industries, Plaintiff was placed at Miriam Hospital for a part-time security job. Supervisors reported that, for several weeks, he worked very hard, was able to complete all duties assigned and able to get along with supervisors, with a "very mature and respectable" manner at all times. Tr. 260-61. Next, he was placed for several weeks with CVS to work as a stocking clerk, still part-time but for a more intense schedule than at Miriam. Performance findings from CVS were even more positive – his evaluation noted that he worked "very hard" and "would stay productive throughout his entire shift," "worked well with supervisors and . . . was able to make a good impression." Tr. 258-59. At the end of the CVS placement, Plaintiff was urged to apply for an open third-shift position. Tr. 259.

To support Plaintiff's disability application, Dr. Greer, Plaintiff's life-long treating psychiatrist, submitted three opinions. The first, signed on June 26, 2014, included both a child and an adult assessment. Tr. 348-53. In the 2014 child RFC, Dr. Greer opined to extreme limitations in three domains (acquiring and using information, attending and completing tasks, and interacting with others), marked limitations in self-care and no limits in the others. Tr. 350-51. Dr. Greer's 2014 adult RFC is similar, with severe limits in the abilities to relate to other people, to engage in routine, repetitive unskilled work, and to respond to customary work pressures. Tr. 352-53. Signed on February 11, 2015, Dr. Greer's third opinion records that Plaintiff is markedly limited in the ability to carry out simple instructions and extremely limited in the ability to make simple work-related decisions. Tr. 357-58.

The ALJ did not afford "any significant weight" to Dr. Greer's 2014 and 2015 opinions because of their inconsistency with Dr. Greer's own treating notes. For "good reasons" to explain the determination, Sargent v. Astrue, No. CA 11-220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012), the ALJ noted that, during treatment, Dr. Greer had consistently

5

found Plaintiff to be stable, with only occasional conflicts with his grandmother, and that he left Plaintiff's medications unchanged. See Tr. 30.

Instead of relying on Dr. Greer, the ALJ's adult RFC is based on the opinion of the state agency reviewing expert psychologist, Dr. Michael Slavit. Dr. Slavit found Plaintiff's capacity for appropriate social interaction to be the most problematic domain, but nevertheless opined to moderate limitations based on the Providence Center's treating record and Dr. Armesto's report. Tr. 89. Similarly, Dr. Slavit relied heavily on Dr. Armesto in finding moderate limits in understanding, memory and the ability to sustain attention and persistence. Tr. 87-88. Based on the functional limitations opined to by Dr. Slavit, the ALJ found that Plaintiff retained the ability to perform simple work involving object-oriented tasks, with significant limits on social interaction. Tr. 28.

## II.     Issue Presented

Plaintiff contends that the ALJ failed properly to evaluate the record references that establish Plaintiff's inability to handle customary work pressures and that this error leaves the RFC assessment without substantial evidence to support it.

## III.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by

substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).

## IV.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 416.905.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have impairments that significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment

7

and is not disabled.  Id. § 416.920(c).  Third, if a claimant's impairments meet or equal an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. §

416.920(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant

work, she is not disabled.  Id. § 416.920(e).  Fifth, if a claimant's impairments (considering her

RFC, age, education and past work) prevent her from doing other work that exists in the local or

national economy, then she is disabled.  Id. § 416.920(f).  Significantly, the claimant bears the

burden of proof at Steps One through Four.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D.

Mass. 2003) (five step process applies to both DIB and SSI claims).

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F.

Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 416.927(c).  If a treating physician's opinion on

the nature and severity of a claimant's impairments is well-supported by medically acceptable

clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial

evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, No. 11-193L,

2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 416.927(c)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is

unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of

Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).  The ALJ's decision must

articulate the weight given, providing "good reasons" for the determination.  See Sargent, 2012

WL 5413132, at *7-8, 11-12 (where ALJ failed to point to evidence to support weight accorded

treating source opinion, court will not speculate and try to glean from the record; remand so that

ALJ can explicitly set forth findings).  When a treating physician's opinion does not warrant

controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length

8

of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 416.927(c).  As SSR 96-2p provides:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 (July 2, 1996).

## V.    Analysis

Boiled to its essence, this case mounts a dual-barreled attack on the ALJ's determination that Plaintiff was not disabled after he turned eighteen.[3]  The first volley aims at the ALJ's treatment of the Greer opinions.  Plaintiff's second salvo is based on his contention that the ALJ ignored contrary evidence in formulating an RFC premised on the opinion of the state agency examining psychologist Dr. Slavit, who found that Plaintiff is moderately – not severely – limited in his ability to respond to customary work pressures.  See Tr. 56.

The more substantive argument[4] of the two is Plaintiff's attack on the ALJ's determination not to afford "any significant weight" to Dr. Greer's 2014 and 2015 opinions because of their inconsistency with Dr. Greer's own treating notes.  See SSR 96-2p, 1996 WL

---

[3] Citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999), Plaintiff also argues in passing that the ALJ wrongly interpreted raw medical data.  That is not so.  The decision is crystalline – the ALJ relied on the expert examining psychologist Dr. Slavit, who in turn relied on his review of a materially complete file that included most of the Providence Center records and two of Dr. Greer's three opinions.  In any event, Plaintiff has not challenged the Slavit opinion.  See Howcroft v. Colvin, C.A. No. 15-201S, 2016 WL 3063858, at *12 (D.R.I. Apr. 29, 2016).  This argument will not be discussed further in this report and recommendation.

[4] The Commissioner contends that this argument is so undeveloped that the Court should treat it as waived.  Plaintiff did not reply and therefore has not addressed this proposition.  In light of the importance of the argument to Plaintiff's case, I decline to rely on waiver and have addressed its merits.

374188, *3 (treating source not entitled to controlling weight if there is obvious inconsistency between opinion and other substantial evidence); 20 C.F.R. § 416.927(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion").  For "good reasons" to explain the determination, Sargent, 2012 WL 5413132, at *7-8, the ALJ acknowledged Dr. Greer's status as the treating psychiatrist, but noted that, during treatment, Dr. Greer consistently found Plaintiff to be stable with only occasional conflicts with his grandmother, and that he left Plaintiff's medications unchanged.  See Tr. 30.  Plaintiff disagrees, arguing that the Greer opinions are actually "well-supported and not inconsistent with the other substantial evidence in the case record."  ECF No. 12 at 17 (citing SSR 96-2p(6)).  He contends that application of the factors enumerated in 20 C.F.R. § 416.927 for evaluating the weight to afford the opinion of a treating physician should have resulted in the finding that they must be given controlling weight, or the greatest weight if they did not meet the test for controlling weight.  See ECF No. 12 at 17.

Importantly, Plaintiff does not dispute the ALJ's finding that the Greer opinions clash with Dr. Greer's treating notes.  Instead, to support the proposition that the Greer opinions are consistent with other evidence, he points to what he claims is other consistent evidence, specifically Dr. Armesto's consultative examination report, which states that Plaintiff's "capacity to negotiate work-related tasks, especially interacting with peers and negotiating interpersonal relationships is moderately to markedly impaired."  Tr. 308.  Plaintiff also relies on observations of the fifth-year teacher, who wrote that, "[Plaintiff] takes constructive criticism poorly and becomes agitated quickly, often shutting down and refusing to participate, as well as that, "[Plaintiff] requires a strict routine and guidance in order to be successful and independent."  Tr. 269, 271.

10

I find no error in the weight that the ALJ afforded to the Greer opinions.  First, as Plaintiff concedes by his failure to argue otherwise, the ALJ's summary of the Greer treating record is an accurate reflection of the observations recorded by Dr. Greer, which contrast markedly with the Greer opinions.  See, e.g., Tr. 329 ("Mood is fairly stable, though he continues to have intermittent episodes of dyscontrol"), Tr. 359 ("attending school program and generally doing well, though he is resistant to doing work there"), Tr. 361 ("Attention & Concentration: Alert; Memory: Intact"), Tr. 388 ("notable improvement has been seen in explosivity in recent years . . . Affect: full range; Behavior: calm . . . Continue current medications and treatment plan"), Tr. 394 ("doing well in school and at home").  Further, Dr. Greer's opinions (but not his treating notes) are also dramatically inconsistent with the clinical observations of his Providence Center colleague, Mr. Charron, the therapist who met regularly and frequently with Plaintiff and his grandmother.  Mr. Charron observed that Plaintiff and his grandmother were cooperative (or very cooperative) during most sessions, as well as that Plaintiff displayed normal mood, affect, behavior and energy level, intact memory, and "alert" attention and concentration.  Tr. 333, 370-372, 399, 434, 436-37.  Nor did the ALJ improperly rely on a lay evaluation of the Greer/Charron treating notes; to the contrary, the "good reasons" to reject the Greer opinions are corroborated by Dr. Slavit, the state agency psychologist, whose concentration/persistence and social interaction findings specifically reference his expert interpretation of the Providence Center's mental status examinations.  Tr. 88-89.

Also flawed is Plaintiff's reliance on what he claims is supposedly consistent (with the Greer opinions) evidence.  For example, Plaintiff points to the Armesto report, yet Dr. Armesto found that Plaintiff's concentration and task persistence were both appropriate and observed good behavioral control with no displays of frustration or aggression.  Tr. 308.  More

11

importantly, the overall significance of Dr. Armesto's test results and clinical observations was converted into functional limitations by the expert, Dr. Slavit, who expressly noted his heavy reliance on Dr. Armesto's report, as well as on the Providence Center's treating notes.  Tr. 87-89. As to the fifth-year teacher, she is a non-acceptable source and her opinions were based on the child standard, although Plaintiff was over eighteen at the time of her observations.  In any event, the ALJ found that the teacher's opinion on the six domains of childhood warranted "some weight," in that it was somewhat consistent with the Slavit analysis.  See Tr. 22.  For example, while the teacher's comments appear to emphasize Plaintiff's confrontational reactions, she also found that Plaintiff had mostly "slight problem[s]," occasionally "obvious problem[s]," in attending and completing tasks.[5]  Tr. 266.  I do not find that the assessment of this teacher materially undermines the sufficiency of the ALJ's good reasons for discounting the Greer opinions.

Plaintiff's second argument focuses on the ALJ's determination that Plaintiff is moderately limited in his ability to respond to customary work pressures.  Tr. 56.  In making this argument, Plaintiff asks the Court to take a fresh look at the record "as a whole," which, he contends, will yield the finding that he is an individual who is unable to handle the customary work pressures and unable to engage in even minimal interactions with others.  ECF No. 12 at 18.  The problem with the argument is that it amounts to a request that the Court reweigh the evidence to come to a different conclusion, which is not the Court's task.  See Barcelos v. Colvin, No. CA 13-238-M-LDA, 2014 WL 3784492, at *5-7 (D.R.I. July 31, 2014).  Rather, the Court must look at whether the ALJ relied on substantial evidence for his RFC.  In this case, it is clear that he did by resting on the unchallenged opinion of Dr. Slavit, who examined the Armesto

---

[5] Out of the thirteen areas of inquiry, this teacher made only one "serious" finding in the domain of "attending and completing tasks"; that was in the area of "organizing own things or school materials."  Tr. 266.

12

report and the Providence Center's treating notes, as well as on the balance of the evidence, including the evidence of Plaintiff's successful completion of two Goodwill work placements. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (in reviewing an ALJ's decision for substantial evidence, the court cannot "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]"); Vieira v. Berryhill, C.A. No. 1:16-CV-00469, 2017 WL 3671171, at *5 (D.R.I. Aug. 25, 2017) (same).  When substantial evidence supports the ALJ's decision, record evidence supportive of a different outcome is not a reason to overturn it.  See Rodriguez Pagan, 819 F.2d at 3.

Based on the foregoing, I find that the ALJ's RFC is amply supported by substantial evidence.  Seeing no error, I recommend that the ALJ's decision be affirmed.

## VI.    Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 15) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 20, 2018

13